**UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA**

STEVE MICHAEL COX,                )      3:11-cv-00539-LRH-WGC
                                  )
    Plaintiff,                    )      **REPORT AND RECOMMENDATION**
                                  )      **OF U.S. MAGISTRATE JUDGE**
vs.                               )
                                  )
GREGORY W. SMITH, et. al.         )
                                  )
    Defendants.                   )
_____)

       This Report and Recommendation is made to the Honorable Larry R. Hicks, Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Defendants' Motion for Summary Judgment. (Doc. # 110.)[1] Plaintiff has not filed an opposition despite being given an extension of time to do so. (*See* Minutes, Doc. # 138 at 2.) After a thorough review, the court recommends that Defendants' motion be granted, as set forth below.

**I. BACKGROUND**

       At all relevant times, Plaintiff Steve Michael Cox was an inmate in custody of the Nevada Department of Corrections (NDOC). (Pl.'s Am. Compl. (Doc. # 15).) Plaintiff, a pro se litigant, brings this action pursuant to 42 U.S.C. § 1983. (*Id.*) Defendants are Gregory W. Smith, Bruce Bannister, Quentin Byrne, Greg Cox, Michael Cruse, Dr. Donaldson, Anita Habberfield, Terri Jacobs, Michael Koehn, E.K. McDaniel, Sean Nicholas, Howard Skolnik, Lawrence

---

[1] Refers to court's docket number. Unless otherwise noted, all page number references are to the page numbers from the docketed version and not Defendants' original page numbers.

Whittington, and Shell Zappettini. (*See* Screening Order (Doc. # 17).)

On screening, the court determined that Plaintiff states the following colorable claims: (1) Count II- an Eighth Amendment medical claim against defendants Koehn and McDaniel related to the allegation that they confiscated his quad cane; and (2) Count V- an Eighth Amendment medical claim related to his allegation of food tampering against defendants Cruse, Whittington, Nicholas, Bannister, Donaldson, Jacobs, Smith, Byrne, Habberfield, Skolnik, and Cox. (*See* Doc. # 17.)

Defendants filed their motion for summary judgment on November 16, 2012. (Doc. # 110.) The court subsequently extended the deadline for Plaintiff to respond to March 25, 2013. (*See* Minutes, Doc. # 138 at 3.) To date, Plaintiff has not filed an opposition.

Defendants argue: (1) Plaintiff failed to exhaust his administrative remedies; (2) defendants Koehn and McDaniel did not violate Plaintiff's Eighth Amendment rights as alleged in Count II; (3) the remaining defendants did not violate Plaintiff's Eighth Amendment rights as alleged in Count V; and (4) Defendants are entitled to qualified immunity. (Doc. # 110.)

## **II. LEGAL STANDARD**

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). All reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* (quoting Fed.R.Civ.P. 56(c)). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250.

The moving party bears the burden of informing the court of the basis for its motion,

1  together with evidence demonstrating the absence of any genuine issue of material fact.
2  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Although the parties may submit evidence
3  in an inadmissible form, only evidence which might be admissible at trial may be considered
4  by a trial court in ruling on a motion for summary judgment. Fed.R.Civ.P. 56(c).

5    In evaluating the appropriateness of summary judgment, three steps are necessary:
6  (1) determining whether a fact is material; (2) determining whether there is a genuine issue for
7  the trier of fact, as determined by the documents submitted to the court; and (3) considering
8  that evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-250.
9  As to materiality, only disputes over facts that might affect the outcome of the suit under the
10 governing law will properly preclude the entry of summary judgment; factual disputes which
11 are irrelevant or unnecessary will not be considered. *Id.* at 248.

12   In determining summary judgment, a court applies a burden shifting analysis. "When
13 the party moving for summary judgment would bear the burden of proof at trial, 'it must come
14 forward with evidence which would entitle it to a directed verdict if the evidence went
15 uncontroverted at trial.'[ ] In such a case, the moving party has the initial burden of
16 establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R.*
17 *Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal
18 citations omitted). In contrast, when the nonmoving party bears the burden of proving the
19 claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence
20 to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the
21 nonmoving party failed to make a showing sufficient to establish an element essential to that
22 party's case on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at
23 323-25. If the moving party fails to meet its initial burden, summary judgment must be denied
24 and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress &*
25 *Co.*, 398 U.S. 144, 160 (1970).

26   If the moving party satisfies its initial burden, the burden shifts to the opposing party
27 to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus.*
28

3

1  *Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual
2  dispute, the opposing party need not establish a material issue of fact conclusively in its favor.
3  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve
4  the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec.*
5  *Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(quotation marks and citation omitted).
6  The nonmoving party cannot avoid summary judgment by relying solely on conclusory
7  allegations that are unsupported by factual data. *Id.* Instead, the opposition must go beyond
8  the assertions and allegations of the pleadings and set forth specific facts by producing
9  competent evidence that shows a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *Celotex*, 477
10 U.S. at 324.

11   At summary judgment, a court's function is not to weigh the evidence and determine the
12 truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.
13 While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be
14 drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not
15 significantly probative, summary judgment may be granted. *Id*. at 249-50, 255 (citations
16 omitted).

17   Finally, the court notes that while Plaintiff failed to oppose the motion, the Ninth Circuit
18 has instructed that "a verified complaint may serve as an affidavit for purposes of summary
19 judgment if it is based on personal knowledge and if it sets forth the requisite facts with
20 specificity." *Moran v. Selig*, 447 F.3d 748, 760 n. 16 (9th Cir. 2006) (citing *Lopez v. Smith*,
21 203 F.3d 1122, 1132 n. 14 (9th Cir. 2000) (en banc) ("A plaintiff's verified complaint may be
22 considered as an affidavit in opposition to summary judgment it if is based on personal
23 knowledge and sets forth specific facts admissible in evidence.")). Accordingly, even though
24 Plaintiff has failed to submit any opposition to Defendants' motion, because he is proceeding
25 pro se, the court must still undertake an analysis of his verified complaint to ascertain whether
26 any of his verified allegations create a genuine issue of material fact.
27 ///
28

### III. DISCUSSION

**A. Exhaustion**

    **1. Legal Standard**

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his administrative remedies irrespective of the forms of relief sought and offered through administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001). The Supreme Court has clarified that exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm grievance, but rather, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). "Proper exhaustion" refers to "using all steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original).

    This district has interpreted Justice Alito's majority opinion in *Woodford* as setting forth two tests for "proper exhaustion": (1) the "merits test," satisfied when a plaintiff's grievance is fully addressed on the merits by the administrative agency and appealed through all the agency's levels, and (2) the "compliance test," satisfied when a plaintiff complies with all critical procedural rules and deadlines. *Jones v. Stewart*, 457 F. Supp. 2d 1131, 1134 (D. Nev. 2006). "A finding that a plaintiff has met either test is sufficient for a finding of 'proper exhaustion.' Defendants must show that Plaintiff failed to meet both the merits and compliance tests to succeed in a motion to dismiss for failure to exhaust administrative remedies." *Id*.

The failure to exhaust administrative remedies is treated as a matter in abatement and is properly raised in an unenumerated Rule 12(b) motion to dismiss. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir.2003). Failure to exhaust administrative remedies is an affirmative defense, and defendants bear the burden of raising and proving failure to exhaust. *Id*. As such, failure to exhaust is not properly raised in a motion for summary judgment, but if it is so raised,

it should be treated as a motion to dismiss. *Ritza*, 837 F.2d at 368 (citations omitted). If the court ultimately finds that Plaintiff has not exhausted his nonjudicial remedies, the proper remedy is dismissal of his claims without prejudice. *Wyatt*, 315 F.3d at 1119-20, as noted in *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1059 (9th Cir. 2007); *see also Ritza*, 837 F.2d at 368. In *Ritza*, the court noted the distinction between summary judgment and dismissal for matters in abatement as it concerns the court's authority to resolve factual disputes:

> [One] reason why a jurisdictional or related type of motion, raising matter in abatement…,should be distinguished from a motion for summary judgment relates to the method of trial. In ruling on a motion for summary judgment the court should not resolve any material factual issue…If there is such an issue it should be resolved at trial…On the other hand, where a factual issue arises in connection with a jurisdictional or related type of motion, the general view is that there is no right of jury trial as to that issue…and that the court has a broad discretion as to the method to be used in resolving the factual dispute.

*Ritza*, 837 F.2d at 369 (citations omitted). Therefore, the court must treat the exhaustion issue as one raised in an unenumerated 12(b) motion, and is tasked with resolving factual issues that arise.

**2. Analysis**

For prisoners within the NDOC system, exhaustion of administrative remedies requires complying with the inmate grievance procedure set forth in NDOC Administrative Regulation (AR) 740. (Doc. # 110-6 at 65-75.) Under the version of AR 740 effective during the time period in question, the procedure consisted of: (1) an informal level grievance; (2) a first level grievance; and (3) a second level grievance. (*Id.*)

It is the prison's own grievance process that determines what requirements must be met to satisfy the exhaustion requirement. *See Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009) (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("prison's own procedures define the contours of proper exhaustion."). AR 740 states that an inmate grievance is improper if it contains, among other things: (1) "more than four (4) unfounded, frivolous or vexatious grievances per month, if the current grievance is not substantial"; (2) "two or more appropriate issues." (Doc. # 110-6 at 73.)

6

### i. Count II- defendant McDaniel

Defendants asserts that Plaintiff failed to exhaust his administrative remedies in Count II as to defendant McDaniel. (Doc. # 110 at 15.) While Plaintiff submitted an informal level grievance, grievance 2006-28-95610, alleging that defendant McDaniel denied him the use of his quad cane, the grievance was denied on the basis that Plaintiff had abused the grievance process by filing in excess of four unfounded, frivolous, or vexatious grievances per month. (*Id.* at 15-16.) In fact, Defendants assert that Plaintiff filed twenty-three grievances in March 2010, many of which were duplicative. (*Id.*) Moreover, Defendants contend that Plaintiff failed to exhaust his administrative remedies because his grievance contained more than one issue, which is prohibited under AR740. (*Id.*)

Plaintiff submitted an informal level grievance dated March 26, 2010. (Doc. # 110-6 at 12,14.) The grievance, number 2006-28-95610, asserts that defendant McDaniel and others denied him the use of his quad cane. (*Id.* at 12, 14.) In response, the prison sent a memorandum dated April 30, 2010, stating that Plaintiff's grievance was improper because he had submitted more than four unfounded, frivolous or vexatious grievances per month. (*Id.* at 13.)

Plaintiff then submitted a first level grievance dated May 26, 2010. (Doc. # 110-6 at 10.) In this first level grievance, Plaintiff states that ESP officials "retaliated against" his access to his legal/personal property by isolating him in his cell because he is disabled. (*Id.*) In response, the prison again sent Plaintiff a memorandum rejecting the first level grievance as improper because Plaintiff had filed more than four unfounded, frivolous or vexatious grievances in a month. (*Id.* at 11.)

Plaintiff submitted his second level grievance, dated June 25, 2010, referencing his informal and first level grievances. (Doc. # 110-6 at 8.) This grievance was also denied, upholding the responses to the informal and first level grievances. (*Id.* at 8, 9.) Plaintiff was instructed that if he had a medical issue, he was to kite to request medical services. (*Id.* at 9.)

The court disagrees that Plaintiff failed to exhaust his administrative remedies with respect to his claim in Count II against defendant McDaniel. First, the court has reviewed the

three grievances filed by Plaintiff, and they do not relate to multiple issues as Defendants represent. The focus of the grievances is on the denial of use of the quad cane. Moreover, Defendants did not reject any of his grievances on the basis that they involved multiple issues. It would be unfair to rely on that argument now in asserting Plaintiff failed to exhaust his administrative remedies if prison officials did not raise it as a reason for rejecting the grievance as improper in the first place.

Second, the court is not convinced by Defendants' argument that Plaintiff did not exhaust his administrative remedies because his grievance was rejected as improper for filing four or more grievances in a month that were unfounded, frivolous or vexatious. Under this reasoning, there was no way for Plaintiff could ever exhaust his administrative remedies to file a lawsuit for this claim. Instead, he would be limited to accept Defendants' determination that his other grievance filings were unfounded and could not seek relief for asserted civil rights violations via the prison's grievance process or in court. This amounts to rendering exhaustion of his administrative remedies "effectively unavailable" under *Sapp v. Kimbrell*, 623 F.3d 813, 822 (9th Cir. 2010). In addition, AR 740 declares a grievance improper if under this section if "the current grievance is not substantial." The responses to Plaintiff's grievances makes no mention of whether the prison found this grievance to be insubstantial.

Defendants rejected Plaintiff's informal and first level grievances as improper, but Plaintiff completed the grievance procedure set forth in AR 740 by filing grievances at all three levels. While this may have been an exercise in futility in terms of obtaining relief from prison officials, he did what he was required to under AR 740 to exhaust his administrative remedies so that he could file a lawsuit. Therefore, the court finds that Plaintiff's claim against defendant McDaniel in Count II should not be dismissed on this basis.

### ii. Count II- defendant Koehn

Defendants also assert that Plaintiff failed to exhaust his administrative remedies with respect to his claim against defendant Koehn in Count II. (Doc. # 110 at 16.) First, they argue that he abandoned grievance 2006-28-98564 by failing to provide a legible second level

8

1 grievance. (*Id.*) Next, they argue that in grievance 2006-29-08642, Plaintiff improperly raised
2 more than one issue in his informal level grievance. (*Id.*)

### a. Grievance 2006-28-98564

Plaintiff submitted an informal level grievance, number 2006-28-98564, dated May 17, 2010, stating that defendant Koehn cancelled medical orders for his quad cane, boots and leg wraps. (Doc. # 110-6 at 23.) The informal level grievance was denied, stating that Dr. Koehn had reviewed Plaintiff's records and determined there was no clinical justification for these items. (*Id.* at 24.) Plaintiff was informed if specific needs arose in the future, they would be addressed at that time. (*Id.*)

Plaintiff then submitted a first level grievance, dated June 15, 2010. (Doc. # 110-6 at 25.) It again asserts that Dr. Koehn ordered that Plaintiff's ambulatory aids, including his quad cane, be cancelled. (Doc. # 110-6 at 25.) Plaintiff's first level grievance was denied, and he was told that if he has medical issues he should send a kite and he would be scheduled in a timely manner. (*Id.* at 26.)

Plaintiff followed this up by filing a second level grievance, dated August 12, 2010. (Doc. # 110-6 at 29.) This was rejected as improper in a memorandum dated September 9, 2010, for being illegible. (*Id.* at 30.) Plaintiff subsequently sent another second level grievance, dated November 8, 2010. (*Id.* at 28.) This was also denied, stating that Plaintiff failed to provide new information to his appeal or to make it legible. (*Id.* at 27.)

While the subsequent second level grievance is not an exemplar of good handwriting, the court has reviewed it and finds that it is no less legible than the informal level and first level grievances, which were not rejected as being illegible, and it clearly makes reference to Plaintiff's informal and first level grievances. (Doc. # 110-6 at 28.) In addition, Defendants rejected Plaintiff's subsequent second level grievance because it failed to provide new information to his appeal, AR 740.07, governing second level grievances, does not contain any provision regarding what is required to be included in a second level grievance. (*See* Doc. # 110-6 at 71.) In contrast, AR 740.06, governing first level grievances, specifically provides that the

9

1  inmate shall include a sworn declaration of the facts that form the basis of the claim that the
2  response to the informal grievance should not be upheld. (*Id.* at 70.) Therefore, the court finds
3  that Plaintiff sufficiently completed all three levels of the grievance procedure set forth in AR
4  740 for grievance 2006-28-98564.

### b. Grievance 2006-29-08642

In Plaintiff's informal level grievance for grievance 2006-29-08642, dated November 5, 2010, Plaintiff asserts that Dr. Koehn denied his request for an ambulatory aid. (Doc. # 110-6 at 42-43.) Plaintiff also discusses other medical conditions and prescriptions, and asserts that he was denied medical care. (*Id.* at 43.) The informal level grievance was denied, stating that Plaintiff had been examined and given tests that show he can ambulate without assistive devices. (*Id.* at 33.)

Plaintiff submitted a first level grievance, dated December 17, 2010, which refers to his informal level grievance. (Doc. # 110-6 at 40.) The first level grievance was denied, stating that the provider has not written an order for a cane, and Plaintiff should kite if he has a specific medical issue. (*Id.* at 41.)

Plaintiff then submitted his second level grievance, dated February 4, 2011, referring to his informal and first level grievances. (Doc. # 110-6 at 38.) The response denied the second level grievance, upholding the answer provided to the first level grievance. (*Id.* at 39.)

Defendants argue that the informal level grievance improperly addressed multiple issues, which is prohibited by AR 740; however, it was not rejected by prison officials on that basis, and a review of the grievance reveals that while it contains a broader discussion of Plaintiff's medical care, its focus was on denial of the ambulatory aid. Therefore, the court cannot find that Plaintiff failed to exhaust his administrative remedies under grievance 2006-29-08642.

### iii. Count V

Defendants assert that Plaintiff failed to exhaust his administrative remedies with respect to Count V because it contained more than one issue, and it only identified defendants

10

Cruse, Whittington, and Nicholas, and not defendants Bannister, Donaldson, Jacobs, Smith, Zappettini, Burns, Habberfield, Skolnick or Cox. (Doc. # 110 at 17.)

The grievance at issue is number 2006-28-95213, and Plaintiff submitted his informal level grievance dated March 21, 2010. (Doc. # 110-6 at 60-63.) In it, he mentions a response to a kite regarding his mental, emotional, physical distress, severe anemia, damaged stomach and digestive system, and disabilities. (*Id.* at 60-61.) He also mentions the denial of a transfer and an alleged retaliatory incident involving defendants Cruse, Nicholas, and Whittington regarding the confiscation of two books and damage to appliances. (*Id.* at 61.) He then mentions his diet which he claims caused him to vomit, and that he suspects food tampering. (*Id.*) He asserts that he believes it was tainted by defendant Cruse's crew. (*Id.*) He then asserts that he will not accept food or drink from defendants Cruse, Nicholas, or Whittington and others. (*Id.* at 62.) He goes on to include various assertions regarding his classification. (*Id.* at 62-63.) The informal level grievance was denied because it contained multiple issues. (Doc. # 110-6 at 51.)

Plaintiff then sent a first level grievance, dated May 26, 2010, stating that NSP medical refused to timely respond to his medical issues. (Doc. # 110-6 at 58.) This grievance was rejected as improper because Plaintiff failed to use his proper name. (*Id.* at 57.)

Plaintiff submitted a second level grievance which refers to his informal and first level grievances. (Doc. # 110-6 at 52.) This was also denied, with the responder agreeing with the previous determinations. (*Id.* at 53.)

Defendants are correct that this grievance was improper because it contained multiple issues (and this was cited as a basis for rejecting the informal level grievance in the first instance), which is prohibited by AR 740. As such, Plaintiff failed to properly exhaust his administrative remedies with respect to Count V. Count V should therefore be dismissed without prejudice.

///

///

11

**B. Eighth Amendment- Count II**

Because the court concluded that Plaintiff did properly exhaust his claims in Count II, it will now address the argument of defendants McDaniel and Koehn that they are entitled to summary judgment.

**1. Legal Standard**

A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove that prison officials were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "The requirement of deliberate indifference is less stringent in cases involving a prisoner's medical needs than in other cases involving harm to incarcerated individuals because '[t]he State's responsibility to provide inmates with medical care ordinarily does not conflict with competing administrative concerns.'" *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *rev'd on other grounds, WMX Tech., Inc. v. Miller*, 104 F.3d. 1133 (9th Cir. 1997). "In deciding whether there has been deliberate indifference to an inmate's serious medical needs, [the court] need not defer to the judgment of prison doctors or administrators." *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989).

A finding of deliberate indifference involves the examination of two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's responses to that need." *McGuckin*, 974 F.2d at 1059; *see also Akhtar v. Mesa*, 698 F.3d 1202, 1213 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (citing *Estelle*, 429 U.S. at 104); *Akhtar*, 698 F.3d at 1213 ("First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain."). Examples of conditions that are "serious" in nature include "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial

12

pain." *Id.* at 1059-60; *see also Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (quoting *McGuckin* and finding that inmate whose jaw was broken and mouth was wired shut for several months demonstrated a serious medical need).

If the medical needs are serious, Plaintiff must show that Defendants acted with deliberate indifference to those needs. *Estelle*, 429 U.S. at 104; *Akhtar*, 698 F.3d at 1213 (quoting *Jett*, 439 F.3d at 1096). "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate indifference entails something more than medical malpractice or even gross negligence. *Id.* Inadvertence, by itself, is insufficient to establish a cause of action under § 1983. *McGuckin*, 974 F.2d at 1060. Instead, deliberate indifference is only present when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Akhtar*, 698 F.3d at 1213 (quoting *Jett*, 439 F.3d at 1096) (This second prong...is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference."); *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (quoting *Farmer*, 511 U.S. at 858). "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment" or the express orders of a prisoner's prior physician for reasons unrelated to the medical needs of the prisoner. *Hunt*, 865 F.2d 198, 201 (9th Cir. 1989) (internal quotation marks and citation omitted). Where delay in receiving medical treatment is alleged, a prisoner must demonstrate that the delay led to further injury. *McGuckin*, 974 F.2d at 1060.

In addition, a prison physician is not deliberately indifferent to an inmate's serious medical need when the physician prescribes a different method of treatment than that requested by the inmate. *See McGuckin*, 974 F.2d at 1059 (explaining that negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights); *see also Snow v. McDaniel*, 681 F.3d 978, 987 (citing *Sanchez v. Vild*,

13

1  891 F.2d 240, 242 (9th Cir. 1989)); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981)
2  (difference of opinion between a prisoner-patient and medical staff regarding treatment is not
3  cognizable under § 1983). To establish that a difference of opinion amounted to deliberate
4  indifference, the inmate "must show that the course of treatment the doctors chose was
5  medically unacceptable under the circumstances" and that the course of treatment was chosen
6  "in conscious disregard of an excessive risk to [the prisoner's] health." *Jackson v. McIntosh*,
7  90 F.3d 330, 332 (9th Cir. 1996) (citations omitted); *see also Snow*, 681 F.3d at 988 (quoting
8  *Jackson*, 90 F.3d at 332) (finding that "a reasonable jury could conclude that the decision of
9  the non-treating, non-specialist physicians to repeatedly deny the recommendations for surgery
10 was medically unacceptable under the circumstances").

**2. Analysis**

Plaintiff's deliberate indifference claim against defendants McDaniel and Koehn is centered on his allegation that they wrongfully denied him the use of his quad cane.

**i. Defendants' argument**

First, Defendants argue that Plaintiff cannot establish a serious medical need, because he demonstrated an ability to ambulate without the assistance of a quad cane. (Doc. # 110-20-21.) Second, Defendants contend that they did not act with deliberate indifference. (*Id.* at 21-22.) Instead, they maintain that Plaintiff has merely raised a difference of opinion with respect to his medical care, which does not rise to the level of a constitutional violation because Plaintiff cannot show that the decision to cancel the quad cane was medically unacceptable under the circumstances. (*Id.*)

Defendant Koehn submitted a declaration stating that he has personal knowledge of Plaintiff's medical condition. (Doc. # 110-6 at 78-79 ¶¶ 4-5.) He states that he has personally examined Plaintiff, and based on his medical history and current medical status, he does not have any medically diagnosable condition which would require the provision of an ambulatory aid. (*Id.* ¶ 5.) To that end, he did not find any medically justifiable reason to order Plaintiff's use of a quad cane, wheel chair or other ambulatory assistance. (*Id.*) This determination came

14

1 after he reviewed Plaintiff's medical chart on March 15, 2010, examined Plaintiff and reviewed
2 the results of objective medical testing performed ono Plaintiff. (*Id.* ¶ 8.) He concludes that
3 Plaintiff's alleged inability to move without ambulatory assistance is psychosomatic. (*Id.* ¶ 10.)

### ii. Summary of relevant medical records

The court has reviewed Plaintiff's medical records, and summarizes the relevant records below.

In January, March, and May of 2008, Plaintiff was noted as using a walker. (Doc. # 111-2 at 3-4.) On May 9, 2008, Plaintiff was seen by Dr. Scott who noted Plaintiff was ambulating well with a walker, and when he requested a wheelchair he was told it would be a disservice. (*Id.* at 4.) It was indicated that Plaintiff had been evaluated by a neurologist who diagnosed Plaintiff as having a "functional" disorder-meaning "[a] physical disorder in which the symptoms have no known or detectable organic basis but are believed to be the result of psychological factors such as emotional conflicts or stress." *See Functional Disorder Definition*, DICTIONARY.COM, http://dictionary.reference.com/browse/functional+disorder (last visited April 18, 2013).

On June 19, 2008, he was seen again by Dr. Scott who stated that Plaintiff walked with an unusual gait and was using a walker. (Doc. # 111-2 at 4.) His impression was that Plaintiff had low back pain and lower extremity weakness, and pedal edema secondary to lack of adequate use of calf muscles. (*Id.*) He told Plaintiff that the "neurologist did not think he had any structural problem, orthopedically or neurologically." (*Id.* at 5.) He further explained to Plaintiff that the "problem is considered 'functional', that his [sic] primary [sic] from [sic] psychological problem and that he should kite to see the psychologist to address these issues, but it was his call." (*Id.*) Dr. Scott specifically informed Plaintiff that "he needs to get off the walker and start using a cane so that he was using his calf and thigh muscles more to improve strength and decrease the swelling in his feet." (*Id.*) Dr. Scott ordered "encouragement to use walking cane." (*Id.*)

Plaintiff saw Dr. Scott again on July 3, 2008, asking for his walker back, which had

15

apparently been taken away. (Doc. # 111-2 at 5.) Dr. Scott again noted that he had ordered that Plaintiff progress to a cane because of the neurologist's diagnosis of a "functional" disorder. (*Id.*) Dr. Scott indicated that Plaintiff was angry, but correctional officers had reported seeing Plaintiff pacing the floors without the use of a cane. (*Id.*) In addition, Dr. Scott stated that Plaintiff walked into the room without a cane or walker with usual gait. (*Id.*) Dr. Scott ordered continuing encouraged use of the cane, and stated that he would try to get a four-pronged cane, to which Plaintiff agreed. (*Id.*)

Plaintiff was seen by Dr. Gedney on August 18, 2008, who went over Plaintiff's history, and noted that after complaints of back and lower extremity pain after an incident in 1997, Plaintiff had a normal MRI, and was diagnosed with a functional disorder by the neurologist in 2007. (Doc. # 111-2 at 6.) She stated that Plaintiff could walk slowly with a quad cane. (*Id.*) She recommended referral to Dr. Lagios for a second opinion. (*Id.* at 7.)

Plaintiff was seen by Dr. Scott on February 17, 2009, who noted that Plaintiff "has psychological complex that decreases patient's mobility." (Doc. # 111-2 at 8.) He was evaluated as walking steadily with a four-pronged cane. (*Id.*)

Plaintiff's history of misusing and storing medications is documented in progress notes records in 2009. (*See* Doc. # 111-2 at 10-12.)

Plaintiff was still using the quad-cane as of October 2, 2009. (Doc. # 111-2 at 13.)

On November 22, 2009, Plaintiff was involved in an incident where he alleged that he was pushed down by correctional officers. (Doc. # 111-2 at 15.) A nursing staff member assisted him to his feet and noted that he was able to ambulate with use of his four-pronged cane. (*Id.*) Plaintiff saw Dr. Scott on November 22, 2009, who stated Plaintiff was walking with "his usual atypical, hard to describe gait." (*Id.*) His impression was that Plaintiff was manipulative. (*Id.* at 16.)

Progress notes from February 16, 2010, note that Plaintiff was unstable on his feet, especially when he is being watched. (Doc. # 111-1 at 21.)

Plaintiff was seen on February 25, 2010, complaining of swelling in both legs. (Doc. #

16

111-1 at 19.) It was noted that Plaintiff fell in 2001, had a walker in 2007, and switched to a cane[2] in June of 2009. (*Id.*) He was assessed by Dr. Mar as having an abnormal gait. (*Id.*)

On March 28, 2010, Plaintiff was seen by Nurse Martin for various complaints, including a request for a cane. (Doc. # 111-1 at 18.)[3] It was noted that he went from sitting to standing and standing to sitting with difficulty. (*Id.*) Nurse Martin ordered that he be admitted to the infirmary, and that he be allowed a cane to ambulate while in the infirmary. (*Id.*) He was scheduled for an appointment with defendant Koehn. (*Id.*)

Plaintiff sent a medical kite on March 29, 2010, requesting TED hose. (Doc. # 110-1 at 33.) He sent a similar kite on March 30, 2010. (Doc. # 110-1 at 37.)

On March 30, 2010, he was evaluated by Dr. Koehn, and it was noted that he had a litany of complaints about the system, but no clear medical complaints, and Dr. Koehn concluded there was no clear indication for admission to the infirmary. (*Id.*)

On March 31, 2010, Plaintiff requested TED hose for lower edema and a cane for mobility. (Doc. # 111-1 at 16.) Defendant Koehn advised him that there is no medical contraindication for a cane or TED hose. (*Id.*)

Plaintiff sent medical kites on April 7, 2010 and April 8, 2010, asking that the quad cane order be reinstated, stating that he would suffer clots. (Doc. # 110-1 at 51-53.)

On May 5, 2010, he sent a kite staying that he was being denied Ace bandages to prevent swelling in his legs. (Doc. # 110-2 at 6-7.) He sent similar kites requesting orders for a quad cane on May 9, 13, and 17, 2010. (*Id.* at 10-15.)

On May 13, 2010, defendant Koehn's progress notes state that a review of Plaintiff's chart demonstrates no basis for ordering a cane or other ambulatory aid, and such orders were discontinued. (Doc. # 111-1 at 14.) Custody was advised to monitor Plaintiff's daily living

---

[2] The terms "cane" and "quad cane" appear to be used interchangeably throughout Plaintiff's medical records.

[3] It is not entirely clear from the records whether his cane was confiscated at this time, as it appears that he had it when he was last evaluated by Dr. Mar a month prior, on February 25, 2010. This is not essential to the court's analysis as defendant Koehn concluded after reviewing Plaintiff's records and upon examination that Plaintiff did not need *any* ambulatory assistance.

activities and report whether Plaintiff had difficulty. (*Id.*)

On May 17, 2010, Plaintiff was seen by Nurse Martin who informed him of the discontinuation of the cane and Plaintiff told him that his legs would swell and develop clots and "this is attempted murder." (Doc. # 111-1 at 14.)

On July 27, 2010, Plaintiff was supposed to be received in the infirmary for complaints of broken ribs, but refused to go stating that he needed a wheel chair or gurney even though there were no orders in place for such assistive devices. (Doc. # 111-1 at 11.) It was also noted that Plaintiff had been seen ambulating in his cell and in other areas. (*Id.*)

On December 3, 2010, defendant Koehn noted that Plaintiff was demanding a wheelchair or other support for walking in case he falls. (Doc. # 111-1 at 6.) Dr. Koehn stated his opinion was that Plaintiff was malingering, and notes a history of malingering and self-injury. (*Id.*)

On December 27, 2010, Plaintiff was seen for a variety of complaints. (Doc. # 111-1 at 5-6.) The progress notes indicate that Plaintiff's gait was different on the way out of the exam room than when he came in, and defendant Koehn observed an apparent emphasis on the left leg, which he instructed custody to monitor. (Doc. # 111-1 at 5.)

Plaintiff refused to be seen on February 9, 2011 and March 16, 2011. (Doc. # 111-1 at 5.)

### iii. Conclusion

After reviewing Defendants' arguments, Dr. Koehn's declaration, the relevant medical evidence, and Plaintiff's Amended Complaint, the court concludes that Plaintiff's claim in Count II constitutes a difference of opinion regarding the treatment provided to Plaintiff. To rise to the level of deliberate indifference, there must be evidence that the course of treatment, *i.e.*, the decision to disallow Plaintiff's use of a quad cane, was medically unacceptable under the circumstances and was chosen in conscious disregard of an excessive risk to Plaintiff's health.

The court has not been presented with such evidence. Instead, the evidence shows that the decision to terminate the order that Plaintiff may rely on any ambulatory aid, either a

standard or quad cane, was based on Dr. Koehn's medical determination after reviewing Plaintiff's voluminous medical history and examining him. The medical records contain various references to Plaintiff's history of malingering, of manipulating his medical condition, as well as a diagnosis from a neurologist of a functional disorder and Dr. Koehn's examination of Plaintiff. These documents provide a medical basis for Dr. Koehn's determination, and tend to suggest that the his course of treatment was not medically unacceptable under the circumstances. On the other hand, there is no evidence before the court to show that discontinuing the order for an ambulatory aid was in conscious disregard to an excessive risk to Plaintiff's health. When defendant Koehn disallowed the use of an ambulatory device, he specifically ordered that Plaintiff continue to be monitored to determine if he experienced difficulty ambulating. Plaintiff's bald allegations that this caused him to suffer further injury are unsupported by his medical records. Plaintiff has not opposed the motion, and his Amended Complaint does not set forth specific facts that serve as competent evidence raising a genuine issue for trial. Accordingly, the court recommends that summary judgment be granted in Defendants' favor.

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order: (1) **DISMISSING WITHOUT PREJUDICE** Count V of Plaintiff's Amended Complaint, asserted against defendants Cruse, Whittington, Nicholas, Bannister, Donaldson, Jacobs, Smith, Byrne, Habberfield, Skolnik, and Cox; and (2) **GRANTING** summary judgment in favor of Defendants McDaniel and Koehn in Count II.

///
///
///
///
///
///

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED: April 19, 2013.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE